IN RE ESTATE OF IDA WECKER.
HUGO A. WECKER ET AL., APPELLANTS, V. ANNA ZUECHER ET AL., APPELLEES.
FILED APRIL 3, 1930. No. 27098.

*Frederick M. Deutsch* and *James E. Brittain,* for appellants.

*M. H. Leamy, contra.*

Heard before GOSS, C. J., DEAN, THOMPSON, EBERLY and DAY, JJ., and CARTER and CHASE, District Judges.

GOSS, C. J.

This case involves the final distribution of the personal property left by Ida Wecker, who died intestate on November 2, 1926.

The controversy arose in the county court when the estate of Ida Wecker was up for final distribution. The parties in interest are the ten children of Ida Wecker. Four of them were the parties affirmatively interested in the appeal from the final decree of distribution in the county court and they also appealed from an adverse judgment in the district court. The other six children are appellees here as they were satisfied with the decrees in the county and district courts. All of them were represented in both courts. They were and are the only persons interested in the distribution of their mother's estate. They and their mother were the only parties interested in the distribution of their father's estate.

On the trial in the district court most of the facts were stipulated. Nicholas Wecker, the father of these ten children, died June 1, 1915, a resident of Pierce county. His will was probated in that county. It devised 320 acres of land to his son Oswald and devised and bequeathed all the remainder of his property, both real and personal, to his wife for her use during her natural life, without the power to sell the real estate. It devised and bequeathed the remainder in said real and personal property to his daugh-

ters Anna Zuecher, Selma Grunwald, Clara Wecker, Ida Wagner, Lena Huwaldt, and to his son, Oscar Wecker, as tenants in common, share and share alike. Aside from the farm devised to Oswald, the only real property left by Nicholas Wecker was a quarter section of land and two lots in the town of Pierce, all in Pierce county. All debts were paid out of the personal property. The estate of Nicholas Wecker was closed by a final decree and Ida Wecker as executrix was fully discharged on July 7, 1916. She took possession of the said real property given her for her life use and of the personal property remaining. On the trial in the district court the parties stipulated that the personal property, when so taken over by her, was of the value of $18,902.40; and that at the time of her death none of the personal property described in the final decree in the estate of Nicholas Wecker "existed in specie" except a few shares in local companies, separately described in the stipulation and there stipulated as valued at a total of $1,200.

The evidence shows that the total value of the personal property left in the estate of Ida Wecker for expenses of administration and distribution was about $30,000. In the final decree the district court found the amount then on hand to be $29,678.65. Of this sum the judgment allotted $20,831.38 to the six remaindermen under a finding that such sum was the corpus of the estate derived by Ida Wecker from the estate of Nicholas Wecker and preserved by her, and the balance of $8,847.27 was allotted to all her ten heirs as the personal property of Ida Wecker at the time of her death; the decree ordered the expenses of administration to be paid out of the total in proportion to the above allotments.

No evidence has been pointed out to us, nor can we find any ourselves, which indicates the basis for discovery as to the personal property of Ida Wecker in her own right at the time of her husband's death or what she may have acquired at any time thereafter, except perhaps a few hundred dollars worth of wearing apparel and household goods.

The parties expressly stipulated in the evidence during the trial "that, by the terms of the said last will and testament, it was the intention of the said Nicholas Wecker, deceased, to give a life estate in the residue of his property therein referred to to the said Ida Wecker with the power of disposition and sale of the personal property and also the right to consume such portions of the corpus thereof as might be reasonably necessary for her support and maintenance according to her standard of living and station in life."

In effect, the decree finds and holds that Ida Wecker had no personal property at the time of her husband's death; and that she had no personal property in her own right when she died intestate, except the amount of the increase of the personal property, as heretofore stated, taken over here from her husband's estate and left by her to be distributed to all ten heirs share and share alike. As we have indicated, we find no evidence to warrant the assumption that any of the personal property left by her was derived from her husband's estate, except the stocks in the local companies valued at $1,200. The record being silent upon the subject, there was no evidential basis for the decree of the district court that found and held in effect that she had in no way depleted the corpus of the personal property derived from the estate of her husband. For aught the evidence shows, she may have had $30,000 in her own right and may have used all of the personal property derived from her husband's estate, except the stocks heretofore mentioned, in the years between the settlement of his estate and the time of her death. The parties stipulated that she might do this if reasonably necessary, but they have failed to show in evidence that element so essential to arrive at any definite amount, except the $1,200, as the remaining corpus of the personal property derived from her husband's estate. Thus, we cannot say that the $18,902.40, which the parties stipulated as the value of the personal property she took over from her husband's estate, or the $20,831.38, which the district court found and decreed was the true

amount, is the fund which should be paid over, subject to costs and expenses, by her administrator to the six appellees as remaindermen under the will of Nicholas Wecker. Because of this failure of the evidence, the case will have to be sent back to the district court.

We do not desire to embarrass the trial there, or the review here, if perchance the case should come here again. But we deem a few suggestions helpful. The estate of Nicholas Wecker was fully closed and the executrix was discharged. When this controversy arose in the estate of Ida Wecker, intestate, in the county court, there are some things to indicate that perhaps the county court appointed as administrator *de bonis non* in the estate of Nicholas Wecker the same person, A. J. Mastalir, who was the administrator of the estate of Ida Wecker. The transcript in the county court proceedings shows that the county judge and the appellees had the idea that the two estates were to be coupled, in the title and in some references elsewhere. To some extent this practice persisted in the district court. The appellants, however, filed their petition and reply in the county court as well as in the district court as in the estate of Ida Wecker, seeking to impress upon the distribution of her personal property the character of personality belonging to her alone, whereas the answers setting forth the position of appellees in the county court and in the district court more or less vaguely coupled the two estates and described the administrator as being administrator of both estates. In the circumstances we think the matter should have been considered, as we think it in fact was in effect considered, as arising in the estate of Ida Wecker alone. The source of the personal property derived by Ida Wecker from the estate of Nicholas Wecker, the amount thereof, the terms under which she took it, and like questions, were evidential facts to be discovered from facts arising in the estate of Nicholas Wecker, but that did not prevent the settlement of the controversy, between the parties here, in the proceedings in the estate of Ida Wecker. The stipulation of the parties heretofore partly quoted from the evi-

_dence seems to indicate that this was the real understanding of the parties.

Whilε A. J. Mastalir as administrator filed and verified the answers both in the county court and district court, it is apparent that on both occasions he was acting in the interests of the six remaindermen who were expressly substituted for him as parties in the trial in the district court. The same attorney who represented him in the county court and when he filed his answer in the district court continued to represent appellees in the district court after they were substituted as parties for the administrator. In these circumstances neither the appellees nor appellants were prejudiced nor will be heard to say that the issues were between different parties in the county and district courts.

The appellees cross-appealed and asked for more than they got by the decree of the district court. Their right so to do is questioned by appellants. It is not necessary to consider this matter as it goes back to the district court with the appeal.

For the reasons stated, the judgment of the district court is reversed and the cause remanded for a new trial in accordance with the views expressed in this opinion.

REVERSED.